IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THE VANGUARD GROUP, INC. §
and PHILLIPS 66 COMPANY, §
§
Plaintiffs, §
§
v. § CIVIL ACTION NO. H-14-0061
§
YASAMIN SHIKHABOLHASSANI, §
JESSICA MAULDIN, and CYRUS §
NAJAFIZADEH, §
§
Defendants. §

## MEMORANDUM OPINION AND ORDER

This case stems from a dispute over funds left in the employee-
benefit account of Mohammad Najafizadeh ("Mohammad"), a deceased
former employee of ConocoPhillips and, later, of spun-off Phillips
66 Company. Phillips 66 and its plan administrator, The Vanguard
Group, Inc. (collectively, the "Plan") brought an Original Complaint
for Interpleader and Declaratory Judgment on January 10, 2014,
naming as defendants Mohammad's widow, Yasamin Shikhabolhassani
("Yasamin"), and his children from a prior marriage, Jessica Mauldin
("Jessica") and Cyrus Najafizadeh ("Cyrus").[1] Yasamin filed cross-
claims and counterclaims for declaratory relief and civil

---

[1]Plaintiffs' Original Complaint for Interpleader and
Declaratory Judgment ("Complaint for Interpleader"), Docket Entry
No. 1. Jessica Mauldin has since settled. See Joint Status
Report, Docket Entry No. 31.

enforcement under ERISA.[2]  Pending before the court are Defendant/
Counter-Plaintiff/Cross-Plaintiff Yasamin Shikhabolhassani's Motion
for Partial Summary Judgment ("Yasamin's MPSJ") (Docket Entry
No. 16);   Plaintiffs/Counter-Defendants':   (1)   Response   to
Shikhabolhassani's Motion for Partial Summary Judgment; and
(2) Cross Motion for Partial Summary Judgment ("the Plan's Cross
MPSJ") (Docket Entry No. 21); Plaintiffs' Motion for Approval of
Interpleader and Discharge ("the Plan's Motion for Approval")
(Docket Entry No. 20); and Cyrus Najafizadeh's Motion for Leave to
Amend Pleading ("Cyrus's Motion for Leave to Amend") (Docket Entry
No. 17).

For the reasons stated below, Yasamin's MPSJ will be denied,
the Plan's Cross MPSJ will be granted in part and denied in part,
the Plan's Motion for Approval will be denied, and Cyrus's Motion
for Leave to Amend will be denied.

## I.  **Background**

### A.  **Factual History**

Mohammad Najafizadeh was an employee of ConocoPhillips and its
successor, Phillips 66, which was spun off in 2012.[3]  Mohammad
participated in employee benefits plans with both companies.

---

[2]Defendant   and   Counter   and   Cross-Plaintiff   Yasamin
Shikhabolhassani's Original Counterclaim, Cross-Claim and First
Amended Answer ("Yasamin's Counterclaim"), Docket Entry No. 11.

[3]Complaint for Interpleader, Docket Entry No. 1, p. 3.

Vanguard administers the plans. On or about June 10, 2005, Mohammad completed a Beneficiary Designation/Change form (the "Designation Form") for his ConocoPhillips Savings Plan and ConocoPhillips Store Savings Plan.[4] Under the heading "Primary Beneficiary(ies) Group," Mohammad listed his children Jessica and Cyrus, and he wrote "49" in the "Percentage amount" field for each child. Under the heading "Contingent Beneficiary(ies) Group," Mohammad listed his wife, Yasamin, and he wrote "2" in the "Percentage amount" field. The sections of the form state: "Total of all Primary Beneficiaries provided must equal 100%" and "Total of all Contingent Beneficiaries must equal 100%." The form also states: "If you need additional space to name additional primary or contingent beneficiaries, please attach additional forms as instructed on the reverse side."

Under "Spousal Consent," the form states that if the participant's spouse is not the only primary beneficiary, the spouse "must sign this box and the signature must be properly notarized." Yasamin signed the form in the space provided. Below Yasamin's signature is the signature of Billie L. McDonald as notary public. Both signatures are dated June 11, 2005.[5]

---

[4] Beneficiary Designation/Change Form, Exhibit 1 to Complaint for Interpleader, Docket Entry No. 1-1. Both plans were later merged into the Phillips 66 Savings Plan.

[5] The parties do not dispute that Yasamin signed the form, and there is no evidence that she did so outside McDonald's presence.

McDonald's notary stamp also appears, and it lists an expiration date of March 16, 2005.[6]

When Mohammad died in April of 2013 the value of his plan benefits was approximately $2.2 million.[7] The Plan sent beneficiary confirmation forms to Cyrus, Jessica, and Yasamin. Upon the return of Cyrus's paperwork, Vanguard transferred $1.08 million, 49% of Mohammad's account balance, into Cyrus's retirement account. Jessica returned her paperwork but did not direct Vanguard to transfer any funds. Fifty-one percent of the balance thus remained in Mohammad's account.[8] Yasamin, through counsel, sent Phillips 66 a letter claiming that Mohammad had forced her to sign the Designation Form, that the form was invalid because it was notarized after the expiration of McDonald's commission, and that Yasamin was therefore entitled to 100% of the funds in the account.[9]

The Phillips 66 Plan Benefits Administrator denied Yasamin's claim on August 29, 2013.[10] Yasamin appealed on October 22, 2013.[11]

---

[6]Beneficiary Designation/Change Form ("Designation Form"), Exhibit 1 to Yasamin's MSPJ, Docket Entry No. 16-1, p. 2.

[7]The Plan's Motion for Approval, Docket Entry No. 20, p. 3 ¶ 8.

[8]Complaint for Interpleader, Docket Entry No. 1, pp. 4-5 ¶¶ 15-18.

[9]August 15, 2013, Letter from Michael Trevino, counsel for Yasamin, to Conoco Phillips Benefit Center ("Notice of Demand"), Exhibit 1A to the Plan's Cross MPSJ, Docket Entry No. 21-2.

[10]August 29, 2013, Letter from Jesse Stephan, Plan Benefits Administrator, to Michael Trevino ("Response to Notice of Demand"), Exhibit 1B to the Plan's Cross MPSJ, Docket Entry No. 21-3.

[11]October 22, 2013, Letter from Michael Trevino to Savings Plan Committee ("Appeal"), Exhibit 1D to the Plan's Cross MPSJ, Docket Entry No. 21-6.

The plan Benefits Committee denied Yasamin's appeal, explaining that because she was listed as the contingent beneficiary, she would be entitled to benefits only if both Jessica and Cyrus predeceased their father, which they did not.[12] The Benefits Committee acknowledged that McDonald's expired notarial commission "creates an ambiguity as to the appropriate beneficiary" of the plan benefits.[13] The Committee also stated that, "as indicated in [Yasamin's] appeal letter, it may have been Mr. Najafizadeh's intent to allocate 2% of his benefit to [Yasamin] as primary beneficiary."[14] The committee did not address these issues, but noted that "[t]he Plan is examining its legal options for resolving these competing claims."[15] This litigation ensued.

## B.  Procedural History

The Plan brought a Complaint for Interpleader and Declaratory Judgment on January 10, 2014.[16] The Plan seeks interpleader under Fed. R. Civ. P. 22 on the ground that multiple claimants have presented competing claims to Mohammad's benefits, subjecting the

---

[12]January 8, 2014, Letter from Chantal D. Veevaete, Benefits Committee Chair, to Michael Trevino ("Denial of Appeal"), Exhibit 1F to the Plan's Cross MPSJ, Docket Entry No. 21-8, p. 1.

[13]Id.

[14]Id.

[15]Id. at 2.

[16]Original Complaint for Interpleader, Docket Entry No. 1.

Plan to a real and reasonable fear of multiple liability.[17] In the alternative, the Plan seeks a judgment declaring that Yasamin is not entitled to any of Mohammad's benefits and that those benefits are instead owed to Cyrus and Jessica.[18] The Plan also seeks attorneys' fees pursuant to either ERISA or the court's general discretion in interpleader actions.[19]

On April 4, 2014, Yasamin filed a counterclaim against the Plan and a cross-claim against Cyrus and Jessica seeking civil enforcement under ERISA, 29 U.S.C. § 1132, and declarations that (1) the Designation Form is invalid because Yasamin's spousal consent was not properly notarized and the distributions do not equal 100% for each category of beneficiary, (2) Yasamin is entitled to all of the plan benefits, and (3) the Plan abused its discretion by denying Yasamin's claim.[20] Yasamin also seeks attorneys' fees under ERISA.[21]

On July 22, 2014, Yasamin filed a Motion for Partial Summary Judgment, seeking rulings in her favor on her counterclaims and cross-claims.[22] On August 12, 2014, the Plan filed a Cross Motion

---

[17]Id. at 6-7 ¶¶ 24-28.

[18]Id. at 7 ¶¶ 29-31.

[19]Id. at 8 ¶¶ 32-34.

[20]Yasamin's MPSJ, Docket Entry No. 16, pp. 9-11 ¶¶ 49-58.

[21]Id. at 11 ¶ 58.

[22]Yasamin's MPSJ, Docket Entry No. 16.

for Partial Summary Judgment on its declaratory judgment claim.[23] The Plan also filed a Motion for Approval of Interpleader and Discharge the same day.[24]

On July 31, 2014, Cyrus filed a Motion for Leave to Amend Pleading, seeking to file an amended answer, various state-law contract claims against Yasamin, and claims for declaratory relief and civil enforcement against Yasamin and the Plan.[25] He also seeks exemplary damages and attorneys' fees.

## II.  **Motions for Partial Summary Judgment**

Yasamin seeks a declaration that the spousal waiver is invalid and that she, as the sole primary beneficiary, is entitled to all of the funds in the account.[26]  The Plan seeks a declaration that the waiver is valid and that Yasamin, as a contingent beneficiary, is not entitled to any of the funds in the account.[27]  The Plan also seeks a declaration that Jessica and Cyrus are each entitled to 50% of the funds in the account.[28]

---

[23]The Plan's Cross MPSJ, Docket Entry No. 21.

[24]The Plan's Motion for Approval, Docket Entry No. 20.

[25]Cyrus's Motion for Leave to Amend, Docket Entry No. 17.

[26]Yasamin's MPSJ, Docket Entry No. 16, p. 18.

[27]The Plan's Cross MPSJ, Docket Entry No. 21, p. 21.

[28]Id.  At a mediation on September 24, 2014, Yasamin and Jessica "reached an agreement as to the 50% of the disputed funds claimed by Jessica."  Joint Status Report, Docket Entry No. 31, pp. 1-2. However, "notwithstanding the partial settlement, a
(continued...)

## A.  Summary Judgment

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case."  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting <u>Celotex</u>, 106 S. Ct. at 2553).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  <u>Id.</u>  If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial.  <u>Id.</u> (citing <u>Celotex</u>, 106 S. Ct. at 2553-54).  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).

## B.  ERISA Standard of Review

When a qualifying plan denies benefits to a claimant, ERISA provides that the claimant may bring suit in federal district court

---

[28](...continued)
disagreement persists with respect to the proper beneficiary of the 50% of the disputed funds claimed by Cyrus."  <u>Id.</u> at 2.  Therefore, the settlement "does not affect the parties' substantive arguments with respect to the remaining 50% of the funds that remain in dispute."  <u>Id.</u>

"to recover benefits due to him under the terms of the plan." 29
U.S.C. § 1132(a)(1)(B). Federal courts therefore have jurisdiction
to review benefit determinations by ERISA plan administrators.
Firman v. Life Ins. Co. of N. Am., 684 F.3d 533, 538 (5th Cir.
2012). When deciding whether to pay benefits, an ERISA plan
administrator must determine (1) the facts underlying the claim and
(2) whether those facts constitute a claim to be honored under the
terms of the plan. Schadler v. Anthem Life Ins. Co., 147 F.3d 388,
394 (5th Cir. 1998). Where, as here, a plan gives the adminis-
trator discretionary authority to construe the plan's terms, both
determinations are reviewed for abuse of discretion.[29] Id.

The abuse-of-discretion review is a two-step process. Stone
v. UNOCAL Termination Allowance Plan, 570 F.3d 252, 257 (5th Cir.
2009). The first step is to decide whether the administrator's
determination was legally correct. Id. If so, then the inquiry
ends. Id. If not, then the second step is to decide whether the
administrator's determination was an abuse of discretion. Id.

### 1. The Plan's finding of waiver was legally correct.

The Phillips 66 Plan Benefits Administrator and the Benefits
Committee both found that the expiration of the notary's commission

---

[29]Under the Phillips 66 Savings Plan, the Saving's Plan
Committee (now referred to as the Benefits Committee) "has absolute
discretion in carrying out its responsibilit[y]" to "interpret and
administer the Plan." Phillips 66 Savings Plan, Exhibit 1G, Part 2
to the Plan's Cross MPSJ, Docket Entry No. 21-10, p. 26. The
parties do not dispute that the Benefits Committee has such
discretion. See Yasamin's MPSJ, Docket Entry No. 16, p. 11; the
Plan's Cross MPSJ, Docket Entry No. 21, p. 13 ¶ 26.

"creates an ambiguity as to the appropriate beneficiary," one which they apparently resolved in favor of denying Yasamin's claim.[30]

Three factors bear upon whether an administrator's interpretation of a plan is legally correct: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." Firman, 684 F.3d at 540 (internal quotation marks and citations omitted). "The most important of these factors is whether the administrator's interpretation was consistent with a fair reading of the plan." Id. (same). Since none of the parties has addressed the first or third factors, they will not be considered. See id. at 540 n.4.

"Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language." Threadgill v. Prudential Sec. Grp., Inc., 145 F.3d 286, 292 (5th Cir. 1998). ERISA plans are interpreted in their "ordinary and popular sense as would a person of average intelligence and experience." Crowell v. Shell Oil Co., 541 F.3d 295, 314 (5th Cir. 2008) (internal quotation marks and citation omitted). Thus, plan provisions must be interpreted as they are "likely to be understood by the average plan participant, consistent with the statutory

_____

[30]August 29, 2013, Letter from Jesse Stephan, Plan Benefits Administrator, to Michael Trevino, Counsel for Yasamin, Exhibit 1B to the Plan's Cross MPSJ, Docket Entry No. 21-3; Denial of Appeal, Exhibit 1F to the Plan's Cross MPSJ, Docket Entry No. 21-8.

-10-

language." Id. (same). Here, the plan language and the require-ments of ERISA are essentially the same.

The Designation Form and its Instructions for Completing Beneficiary Designation state that a signature in the Spousal Consent section must be "notarized" or "properly notarized."[31] Similarly, the summary plan description states, "If you want to name anyone other than your spouse to be your beneficiary, your spouse must agree to the designation in writing (witnessed by a notary public.)."[32] ERISA similarly requires that spousal consent be "witnessed by a plan representative or a notary public," 29 U.S.C. § 1055(c)(2)(A), and the Designation Form acknowledges that the spousal consent requirement is a matter of federal law.

Yasamin argues that these are "clear, unambiguous instructions on what is required in order for the Consent to be a valid waiver of spousal benefits," and that it is undisputed that McDonald's notarial commission was expired when she notarized Yasamin's signature on the Designation Form.[33] Because ERISA embodies "the public policy of protecting spouses' rights to spousal retirement benefits," Yasamin argues that any waiver of such benefits by a spouse "must strictly comply with the consent requirements set

_____

[31]See Designation Form, Exhibit 1 to Yasamin's MPSJ, Docket Entry No. 16-1.

[32]Phillips 66 Savings Plan, Exhibit 9 to Yasamin's MPSJ, Docket Entry No. 16-9, p. 30.

[33]Yasamin's MPSJ, Docket Entry No. 16, p. 16.

forth in ERISA."[34]  Yasamin relies primarily on Lasche v. Lasche Basic Profit Sharing Plan, 111 F.3d 863 (11th Cir. 1997).  In response, the Plan argues that the sole purpose of the witness requirement is to ensure that the spouse actually signed the waiver of benefits.  "In light of this purpose," the Plan argues, "numerous cases have held that, when—as here—there is no dispute that the spouse signed the waiver, the waiver will be enforced even if it does not strictly comply with Section 1055(c)'s witness requirement."[35]  For support, the Plan relies primarily on two Seventh Circuit cases, Butler v. Encyclopedia Brittanica, Inc., 41 F.3d 285 (7th Cir. 1994), and Burns v. Orthotek, Inc. Employees' Pension Plan and Trust, 657 F.3d 571 (7th Cir. 2011).  While the cases cited by the parties are instructive, none is squarely on point.[36]

Butler, Lasche, and Burns all turn on "the critical question [of] whether the spousal consent was, in fact, witnessed." Burns, 657 F.3d at 571.  In Butler the answer was yes, because a notary's

_____

[34]Id. (quoting Lasche v. Lasche Basic Profit Sharing Plan, 111 F.3d 863, 867 (11th Cir. 1997).

[35]The Plan's Cross MPSJ, Docket Entry No. 21, pp. 14-15 ¶ 30.

[36]Defendants Cyrus and Jessica have argued that Yasamin's waiver may also be valid because McDonald was acting as a notary de facto under Texas law, a theory which, if applicable, could raise a fact issue sufficient to preclude summary judgment. See Defendants' Response to Yasamin Shikhalbolhassani's Motion for Partial Summary Judgment, Docket Entry No. 23, pp. 5-9.  Because the court is persuaded that the waiver was valid based on the undisputed facts of the case, it need not address this alternative theory.

certificate of acknowledgment, regular on its face, is presumed valid absent clear and convincing evidence to the contrary. 41 F.3d at 294. In Lasche the answer was no, because when a spousal consent form requires the signature of a witness, and no witness signs, it cannot be said that the consent was "witnessed" as required by ERISA. 111 F.3d at 866. In Burns, which straddles the middle-ground, the answer was yes, because under the "unique circumstances" where the plan participant is also the plan administrator, a consent is "witnessed" by a plan administrator when the participant-administrator hands the form to his wife, she signs the form outside of his presence, and then she gives the form back to him. 657 F.3d 576-78.

Butler is not very helpful because its holding was limited to the proper resolution of a factual dispute not present here.[37] Lasche is more on point, but the court is not persuaded that such a formalistic application of ERISA's requirements is appropriate in this case.[38] Burns, on the other hand, is analogous, and its

---

[37]By quoting extensively from the District Court opinion in Butler, the Plan's briefing obscures the actual holding on appeal. See the Plan's Cross MPSJ, Docket Entry No. 21, pp. 15-16 ¶¶ 31-32. While the lower court did conclude that "[t]he benefit fund may accept as valid a designation form that a spouse admits signing, but which was signed by the spouse outside the presence of the witnessing notary public or plan representative, without defeating any substantive statutory objective," 843 F. Supp. at 396, the Seventh Circuit affirmed on the narrow ground that the plaintiff lacked sufficient evidence to prove that the form was not properly notarized, 41 F.3d at 294.

[38]As the Plan argues, "[a] strict application of Section 1055(c)'s witness requirements may be justified when, as in Lasche, (continued...)

-13-

reasoning is persuasive. In Burns, there were no facts in dispute:
The plaintiff signed the form and gave it to her husband, who was
a plan representative, and he knew that it was his wife who gave
him the signed form. 657 F.3d at 576. The question was whether
this satisfied the requirement that the consent be "witnessed" by
a plan representative. Id. The Seventh Circuit held that it did.
Id. at 578. Here, no party disputes that Yasamin signed the form
in front of someone who acted as a notary. The purported notary
clearly "witnessed" the signature, but, apparently unbeknownst to
the parties, her commission had expired. The question is whether
this satisfies the requirement that the signature be witnessed "by
a notary." The court concludes that under the facts of this case,
it does.

    The court in Burns acknowledged that the common meaning of the
word "witness" in the context of legal documents suggests that
attestation should be required for a signature to be "witnessed."
Id. at 576. However, "it makes little sense to strictly enforce an
attestation requirement if doing so would produce an absurd
result." Id. The court concluded that, on the facts of the case,
"invalidating Mrs. Burns's consent would produce an absurd result."
Id. at 577. Thus, "the Plan was within its discretion to find that

---

    [38](...continued)
the plan participant and spouse ignore the requirement. But when,
as here, the plan participant and spouse attempt to comply with the
witness requirement, it is difficult to justify a strict
application that punishes the plan participant and subverts his
intent because of the purported notary's negligence." The Plan's
Cross MPSJ, Docket Entry No. 21, pp. 14-15 ¶ 42.

Dr. Burns, as a plan representative, verified the authenticity of his wife's signature on the written consent form and this satisfied § 1055's witness requirement." Id.

Similarly, the requirement that a consent be "notarized" logically implies that the notary's commission not have expired. However, on the facts of this case, invalidating Yasamin's consent on that basis would produce an absurd result. It is undisputed that Yasamin signed the form, and she apparently did so in the presence of someone she thought was a notary for the purpose of verifying the authenticity of her signature. "[C]ompliance with ERISA's literal language in this case would lead to the absurd result of invalidating a spousal consent form that [Yasamin] admits that [s]he signed but now attempts to disavow on [a] technicality." See Butler, 41 F.3d at 294.[39] The court thus concludes that the Benefits Committee's interpretation was consistent with a fair reading of the plan and ERISA, and it therefore was legally correct.

Yasamin argues that the Plan's finding of waiver was nevertheless an abuse of discretion. Citing Crowell v. Shell Oil Co., 541 F.3d 295 (5th Cir. 2008), Yasamin contends that the Fifth Circuit has "repeatedly stated that applying an ERISA plan in a

---

[39]While the Seventh Circuit's language in Butler was dictum, see Burns, 657 F.3d at 576 ("In the end, we sidestepped the interpretive question in Butler . . . ."), "Butler's analysis . . . suggests [a point that is] particularly relevant here," namely, that "the witness requirement should not be interpreted to yield absurd results," id.

manner that directly contradicts the plain meaning of plan language is a clear abuse of discretion."[40] That case stated as much, but it did not so hold. See id. at 318. More importantly, this is simply a rehashing of issues addressed above. The Benefits Committee's determination was legally correct, and it did not abuse its discretion in finding Yasamin's waiver valid.[41] Therefore, Yasamin is not entitled to all of the funds in the account as the default beneficiary under ERISA. Her entitlement to benefits will be controlled by the terms of the Designation Form.

2. The Plan has not met its burden to show that Yasamin is not entitled to any of the funds in the account.

Yasamin's appeal to the Benefits Committee raised an alternative argument: If Yasamin's waiver was valid, "the only reasonable interpretation of the designations on the Form is that [she] was meant to be a primary beneficiary entitled to at least 2 percent of the [funds]."[42] In its response to Yasamin's appeal, the Plan conceded that "it may have been [Mohammad's] intent to

---

[40]Yasamin's MPSJ, Docket Entry No. 16, p. 22.

[41]Yasamin's Appeal to the Benefits Committee and her Counterclaim assert that the Designation Form is also invalid because it does not make a complete allocation of benefits within each category of beneficiary. See Appeal, Docket Entry No. 21-6, p. 6; Yasamin's Counterclaim, Docket Entry No. 11, p. 10 ¶ 54. However, Yasamin omitted this claim from her Motion for Partial Summary Judgment, see Docket Entry No. 16, p. 24, and her briefing relies entirely on the expiration of the notary's commission, see id. at 12-24; Yasamin's Reply and Response, Docket Entry No. 26, pp. 4-22.

[42]Appeal, Exhibit 1D to the Plan's Cross MPSJ, Docket Entry No. 21-6, p. 6.

allocate 2% of his benefit to [Yasamin] as primary beneficiary."[43]
The Benefits Committee nonetheless denied Yasamin's appeal in its
entirety, explaining that as the only primary beneficiaries, Cyrus
and Jessica were "entitled to their proportionate share, or 50%
each" of the funds in the account.[44]

The Plan has not addressed the percentage issue in its
briefing.[45] Nor did it provide any explanation in its denial of
benefits why the beneficiary category printed on the form should
take precedence over the percentage assigned by the participant.
More puzzling still, the Plan originally disbursed 49% of the funds
in the account to Cyrus,[46] but now seeks a declaration that Cyrus
is entitled to 50% of the funds in the account and Yasamin is
entitled to none. The Plan has not met its burden to show that, as
a matter of law, Yasamin is not entitled to any of the funds in the
account or that Cyrus is entitled to 50% of the funds.

Yasamin seeks a declaration that the waiver is invalid and
that she, as the sole primary beneficiary, is entitled to all of

---

[43]Denial of Appeal, Exhibit 1F to the Plan's Cross MPSJ, Docket
Entry No. 21-8, p. 1.

[44]Id.

[45]A footnote in the Plan's Cross Motion for Partial Summary
Judgment states only that Yasamin's alternative argument "was also
denied because [Yasamin], as a contingent beneficiary, is entitled
to benefits only if both [Jessica] and [Cyrus] pre-deceased
[Mohammad] (which did not happen)." Docket Entry No. 21, p. 12 n.5.

[46]Complaint for Interpleader, Docket Entry No. 1, p. 4.

the funds in the account.[47] The Plan seeks a declaration that the waiver is <u>valid</u> and that Yasamin, as a contingent beneficiary, is entitled to <u>none</u> of the funds in the account.[48] Because the waiver is valid, Yasamin is not entitled to <u>all</u> of the funds. Her motion will therefore be denied. Because the Plan has failed to show that Yasamin is entitled to <u>none</u> of the funds, its motion will be granted as to the validity of the waiver but otherwise denied. Since no party has adequately addressed the percentage issue in a dispositive motion, the court cannot rule on the amount of funds, if any, that Yasamin is entitled to.

### III. **Motion for Approval of Interpleader and Discharge**

The Plan's Complaint for Interpleader asserted claims for either interpleader or, in the alternative, declaratory judgment. Since Yasamin's counterclaim against the Plan remains pending following resolution of both parties' motions for summary judgment, discharge of the Plan is not appropriate. Furthermore, the Plan's denial of Yasamin's appeal and subsequent briefing do not provide an adequate basis for determining the proper distribution of benefits based on a valid waiver. The court is not inclined to take on the "unaccustomed role" of claims administrator without further assistance from the parties. <u>Cf.</u> <u>Forcier v. Metropolitan Life Ins. Co.</u>, 469 F.3d 178, 183 (1st Cir. 2006). The ambiguity of

---

[47]Yasamin's MPSJ, Docket Entry No. 16, p. 18.

[48]The Plan's Cross MPSJ, Docket Entry No. 21, p. 21.

the percentages allocated in the Designation Form is an issue to be decided at trial. The Plan's Motion for Approval (Docket Entry No. 20) will therefore be denied.

## IV. **Motion for Leave to Amend**

Cyrus seeks leave to file an amended answer, various cross-claims against Yasamin based on state law, and a counterclaim against the Plan for declaratory relief and civil enforcement.[49] The Docket Control Order filed May 2, 2014, set July 11, 2014, as the deadline for motions to amend the pleadings.[50] Cyrus filed his motion on July 31, 2014.

Rule 16(b) governs the amendment of pleadings after a scheduling order deadline has expired. S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003). Rule 16(b)(4) allows modification of the scheduling order only for good cause and with the judge's consent. "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." S&W Enterprises, 315 F.3d at 536. Good cause is satisfied upon a showing of the movant's inability to meet the court's deadlines "despite the diligence of

---

[49]Cyrus's Motion for Leave to Amend, Docket Entry No. 17. Because Jessica has settled with Yasamin, the requested relief would be binding only as to Cyrus. See Joint Status Report, Docket Entry No. 31, p. 2.

[50]Docket Control Order, Docket Entry No. 15.

the party needing the extension." Id. at 535 (quoting 6A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

In deciding whether the amendment is proper, a court must consider "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." S&W Enterprises, 315 F.3d at 536 (alterations in original) (internal quotation marks omitted) (quoting Reliance Ins. Co. v. La. Land & Exploration Co., 110 F.3d 253, 257 (5th Cir. 1997) (applying Rule 16(b) to the supplementation of an expert report)). The movant bears the burden of demonstrating that he is entitled to the opportunity to amend. See id.

Cyrus states that he did not timely file a motion to amend "because [his] legal counsel was only recently assigned to work on this case, and only recently determined the need to amend pleadings existed."[51] While Cyrus's new attorney may have been newly assigned, and may not have reviewed the case file until after the expiration of the deadline to amend, his firm has represented Cyrus since the outset of this litigation.[52] Because Cyrus offers no explanation for why existing counsel failed to identify these legal

---

[51]Cyrus's Motion for Leave to Amend, Docket Entry No. 17, p. 8.

[52]See Waiver of the Service of Summons, Docket Entry No. 6; Hearing Minutes and Order, Docket Entry No. 14.

theories prior to expiration of the deadline, the court is not persuaded by his argument.

Cyrus argues that amendment is important because his state-law cross-claims provide an alternative ground for recovery that will be precluded should the court enter a final judgment in Yasamin's favor. Although the issue has not been briefed, Cyrus's claims are arguably preempted by ERISA. Even if they are not, since the court has determined that Yasamin's waiver was valid, Cyrus's contract claims are essentially moot, and resolution of the Plan's and Yasamin's claims for declaratory relief will likewise resolve Cyrus's federal law claims. Moreover, since filing his Motion for Leave to Amend, Cyrus has asserted state-law causes of action in a separate lawsuit against Yasamin that is currently pending before another court in this district.[53]

Cyrus argues that amendment would not prejudice the other parties because the evidence relevant to his state-law claims is the same as evidence in the declaratory relief action. However, any overlap in the evidence is outweighed by the new legal and factual analyses required to address his claims, in addition to litigation over preemption and related issues. A continuance is unlikely to cure such prejudice, especially in light of the court's other rulings of today. Cyrus has not demonstrated good cause to amend the scheduling order, and his motion will be denied.

---

[53]See Civil Case No. H-14-3046.

-21-

### III. Conclusions and Order

For the reasons stated above, Defendant/Counter-Plaintiff/Cross-Plaintiff Yasamin Shikhabolhassani's Motion for Partial Summary Judgment (Docket Entry No. 16) is **DENIED**, and Plaintiffs/Counter-Defendants' Cross Motion for Partial Summary Judgment (Docket Entry No. 21) is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiffs' Motion for Approval of Interpleader and Discharge (Docket Entry No. 20) is **DENIED**.

Cyrus Najafizadeh's Motion for Leave to Amend Pleading (Docket Entry No. 17) is **DENIED**.

**SIGNED** at Houston, Texas, on this 26th day of November, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE